Stephanie J. QUINN, Plaintiff–Appellant,

v.

GREEN TREE CREDIT CORPORA-
TION, Defendant–Appellee.

Docket No. 97–9045.

United States Court of Appeals,
Second Circuit.

Submitted June 5, 1998.

Decided Nov. 5, 1998.

Stephanie J. Quinn, Scotia, NY, pro se.

Mark L. Dunn, Martin, Ganotis, Brown, Mould & Currie, P.C., Dewitt, NY, for Appellee.

Before: OAKES, MESKILL, and CABRANES Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

It sometimes happens—more frequently than might be imagined—that an employee whose primary claim of discrimination cannot survive pre-trial dispositive motions is able to take to trial the secondary claim that he or she was fired or adversely affected in retaliation for asserting the primary claim. This is such a case.

Stephanie J. Quinn appeals from the summary judgment of the United States District Court for the Northern District of New York (Gustave J. DiBianco, *Magistrate Judge*), entered in favor of defendant Green Tree Credit Corporation ("Green Tree" or the "Company"), Quinn's former employer.[1] Because we find that Quinn has failed to adduce facts sufficient to support a sex discrimination claim for a hostile work environment, we affirm the district court's grant of summary judgment for the defendant as to that claim. However, we conclude that Quinn has developed a factual record sufficient to withstand summary judgment as to her claim for retaliatory discharge. Accordingly, we vacate so much of the district court's judgment as dis-

---

**1.** Pursuant to 28 U.S.C. § 636(c) and the consent of the parties, this matter was referred to the magistrate judge for all proceedings, through entry of judgment.

posed of that claim, and we remand for further proceedings.

### Background

Between October 1983 and January 1992, Quinn worked at the Syracuse office of Green Tree, a company based in St. Paul, Minnesota that makes loans to mobile home dealers. Quinn was hired for the position of "Loan Processor I," and, by December 1989, had been promoted to "Loan Processor III." During the relevant years of Quinn's employment, her immediate supervisor was Paul Fahey, a credit manager whose own superior was Charles Harwood, the office's regional manager.

From 1984 until 1991, all but one of Green Tree's annual evaluations of Quinn rated her performance "satisfactory" (a three out of a possible five, with five being the highest score) or better in each category. The one exception was Quinn's last review, dated November 29, 1991, which rated as "needs improvement" Quinn's "Communication/Interpersonal Skills" and commented that she "must continue to develop a better working relationship with her fellow employees." Prior reports, by contrast, had noted that Quinn "[h]as a good rapport with dealers and customers" and "continues to demonstrate a good work attitude." On her penultimate review (conducted in November 1990), the report had concluded that, "[t]hroughout all the changes we have been through, she has continued to be an asset to the company." Harwood recommended Quinn for a six percent pay raise following the November 29, 1991 evaluation, and Quinn was given that raise.

In July and September 1991, Quinn had called the New York Division of Human Rights ("DHR") to inquire about possible discrimination occurring at Green Tree. Subsequently, in a letter bearing a receipt stamp of November 21, 1991, Quinn complained to Green Tree's main office of sexual harassment and a hostile work environment at the Syracuse office. Quinn's letter included allegations of sexual harassment perpetrated by Fahey and Harwood, and informed the Company that an identical complaint would be filed with the DHR on December 23, 1991.[2] Thereafter, on November 29, 1991, Quinn received her regular annual evaluation and the six percent pay raise. In December 1991, Green Tree responded by letter to Quinn's complaint. Based on an investigation in the Syracuse office conducted by Harwood, Green Tree's human resources director, located in St. Paul, wrote Quinn that there was no support for her allegations. Quinn responded by filing a charge on December 27, 1991 with the DHR, alleging sexual harassment and a hostile work environment.[3] Then, on January 6, 1992, Green Tree fired Quinn. In March 1992, Quinn filed a second charge with the DHR against Green Tree, alleging retaliatory discharge.

Following the December 16, 1993 issuance of a "right to sue" letter by the Equal Employment Opportunity Commission ("EEOC"), Quinn promptly filed a complaint in the district court. As amended in August 1994, that complaint alleges that Green Tree (a) discriminated against her on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), and the New York Human Rights Law, N.Y. Exec. Law § 296; and (b) fired her in retaliation for her filing a sexual harassment complaint less than a fortnight earlier with the DHR, in violation of 42 U.S.C. § 2000e–3(a) and N.Y. Exec. Law § 296.

In her complaint and discovery responses, Quinn alleged that she was subjected to over thirty separate incidents of sexual harassment during her tenure at Green Tree. The perpetrators of this conduct allegedly included Fahey and Harwood (Quinn's supervisors), Quinn's co-workers, and Green Tree clients. The alleged conduct principally consisted of offensive comments, referring either to the speaker's own sexual prowess, to Quinn's body, or to Quinn's (and her hus-

---

**2.** Nothing in the record explains Quinn's identification of this particular date as the one on which she planned to file a formal charge with the DHR.

**3.** Quinn's DHR charge summarizes the same basic allegations made in her initial complaint to Green Tree's main office.

band's) perceived sexual orientation. Other allegations included the display to Quinn of pornography, the pantomiming of sexual acts, and one instance of Fahey brushing against Quinn's breasts with papers he was carrying.

Following the completion of discovery, Green Tree moved for summary judgment. In support of its motion, Green Tree submitted, along with other documentary evidence, an affidavit subscribed by Harwood. Harwood denied "all ... allegations of harassment or unlawful employment practices." Harwood averred that Quinn had not informed him of any alleged sexual harassment prior to her November 1991 complaint to Green Tree's main office. In addition, Harwood cited complaints from Green Tree clients and other Green Tree employees regarding Quinn's poor "attitude" and "interpersonal skills." Green Tree contended that its decision to discharge Quinn had turned exclusively on these complaints. Quinn resisted summary judgment, submitting copies of her own discovery statements as well as documentary evidence relating principally to her past job evaluations.

In June 1997, the district court granted Green Tree's motion for summary judgment. In considering Quinn's harassment claim, the district court first ruled that all incidents alleged to have occurred prior to March 2, 1991 would be time-barred under the applicable three-hundred-day limitations period, see 42 U.S.C. § 2000e–5(e)(1),[4] and that, because Quinn had failed to demonstrate that the alleged conduct amounted to a "continuing violation," the limitations period could not be

tolled. Looking only at the acts alleged to have occurred within the limitations period, the district court held that the conduct described by Quinn failed to rise to the level of an actionable hostile work environment. In addition, the court ruled that none of the alleged conduct could be imputed to Green Tree.

As to Quinn's retaliatory discharge claim, the district court, applying the burden-shifting rules of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973),[5] found that Quinn had adduced sufficient evidence to make out a prima facie case, and that Green Tree had responded by articulating a permissible reason for her discharge—namely, a desire to preserve Green Tree's good will with clients, who had complained about treatment they received from Quinn. The court determined that Quinn had thereafter failed to rebut Green Tree's response with any evidence of pretext, and accordingly dismissed Quinn's retaliatory discharge claim.

Judgment was entered on June 30, 1997, and Quinn's timely appeal followed.

## Discussion

■■■ We review de novo a grant of summary judgment, see Kracunas v. Iona College, 119 F.3d 80, 86 (2d Cir.1997), construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Maguire v. Citicorp Retail Services, Inc., 147 F.3d

4. This section provides, in pertinent part, that a Title VII charge "shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ..., except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local [EEO] agency ..., such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1) (emphasis added). The district court held that only acts alleged to have occurred within the 300 days preceding Quinn's December 27, 1991 charge filed with the DHR would be timely under this provision.

5. We have summarized these burden-shifting rules, in the context of a defendant's motion for summary judgment directed at a plaintiff's retaliation claim, as follows:

> On a motion for summary judgment, (1) plaintiff must demonstrate a prima facie case of retaliation, (2) defendant then has the burden of pointing to evidence that there was a legitimate, non-retaliatory reason for the complained of action, and (3), if the defendant meets its burden, plaintiff must demonstrate that there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation.

Gallagher v. Delaney, 139 F.3d 338, 349 (2d Cir.1998).

232, 235 (2d Cir.1998). "A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no issue warrant judgment for the moving party as a matter of law." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir.1995). In addition, because New York courts require the same standard of proof for claims brought under section 296 of the Human Rights Law as for those brought under Title VII, *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 n. 4 (2d Cir.1995), we can analyze these claims in tandem.

## I. Hostile Work Environment

■ Title VII provides, in relevant part, that "[i]t shall be unlawful for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The Supreme Court has interpreted Title VII to reach, among other conduct, "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) ("hostile work environment" as sex discrimination). This form of harassment is actionable "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (citations and internal quotation marks omitted).

### A. Which Allegations Are Timely?

■ As a preliminary matter, we turn to the question of whether the district court correctly confined its consideration to those incidents alleged to have occurred within the limitations period, or instead whether the limitations period should have been extended due to the existence of a "continuing violation." Title VII requires a claimant to file a discrimination charge with the EEOC within 180 days of the alleged unlawful employment action or, if the claimant has already filed the charge with a state or local equal employment agency, within 300 days of the alleged act of discrimination. *See* 42 U.S.C. § 2000e–5(e)(1), *quoted at* note 3, *supra; Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir.1996). This requirement functions as a statute of limitations, *see Van Zant,* 80 F.3d at 712, in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court, *see Butts v. City of New York,* 990 F.2d 1397, 1401 (2d Cir.1993).

Because Quinn filed her sex-discrimination charge with the state agency—the DHR—on December 27, 1991, her Title VII cause of action would normally include any incidents alleged to have occurred in the preceding 300 day period; thus, any incidents alleged to have occurred prior to March 2, 1991, would be time-barred under Title VII.

In contrast to her Title VII claim, Quinn's cause of action under New York's Human Rights Law is governed by a three-year statute of limitations, measured from the filing of the action in court. *See* N.Y. CPLR § 214(2); *Van Zant,* 80 F.3d at 714. The instant action was filed on December 28, 1993, and thus, for purposes of the state-law cause of action, any incidents of discrimination alleged to have occurred prior to December 1990 would ordinarily be time-barred.

Quinn asserts that she was subjected to a "continuing violation," of such a character as to extend the limitations period. It is not clear whether she seeks to extend the period only for the Title VII claim, or for the state-law claim as well. In either case, we find her argument unpersuasive.

· ■ The continuing-violation exception "extends the limitations period for all claims of discriminatory acts committed *under an ongoing policy of discrimination* even if those acts, standing alone, would have been barred by the statute of limitations." *Annis v. County of Westchester,* 136 F.3d 239, 246 (2d Cir.1998) (emphasis added; internal quotation marks, citation, and bracketing omitted). We have held that "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993) (citing *Stoller v.*

*Marsh,* 682 F.2d 971, 975 (D.C.Cir.1982)). However, a continuing violation may be found "where there is proof of specific ongoing discriminatory polices or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994).

■ We conclude that the acts Quinn alleges to have occurred outside the limitations periods are not continuous in time with one another or with the timely acts that she has alleged; this discontinuity is fatal to Quinn's "continuing violation" argument. *See Annis,* 136 F.3d at 246 (discrimination allegedly suffered before and after a six-year gap "cannot be joined as a 'continuing violation' "); *Selan v. Kiley,* 969 F.2d 560, 566–67 (7th Cir.1992) (two-year gap between discriminatory events "negates the contention that the acts were continuous or connected"). Quinn alleges only the following incidents as occurring prior to December 1990:(1) several incidents occurring in 1985, (2) two incidents in March 1988, in which a Green Tree manager commented on Quinn's body and "propositioned" her, (3) a March 1989 incident in which a coworker directed apparent sexual advances at Quinn, and (4) a February 1990 comment by Harwood to the effect that Quinn's dress was too large. All of these alleged acts are sufficiently isolated in time (usually from each other, and at least from the timely allegations) as to break the asserted continuum of discrimination.

### B. *Which Conduct Can Be Attributed to Green Tree?*

Having established the relevant time period (after March 2, 1991 for purposes of the Title VII claim; after December 28, 1990 for purposes of the state law claim), we must now consider which, if any, of the alleged acts are attributable to Green Tree. In this regard, we note that Quinn's complaints and discovery papers have included allegations of harassing conduct purportedly committed by co-workers, customers, and her supervisors. The district court ruled that, even accepting *arguendo* Quinn's factual allegations as true,

Green Tree could not be held legally responsible for *any* of the alleged perpetrators' conduct. *See Kotcher v. Rosa & Sullivan Appliance Center, Inc.,* 957 F.2d 59, 63 (2d Cir.1992) (plaintiff "must establish that the conduct which created the hostile environment should be imputed to the employer").

■ When a "co-employee"—as distinct from a supervisor—is alleged to have engaged in harassing activity, the "employer will generally not be liable unless the employer either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it." *Tomka,* 66 F.3d at 1305 (citation and internal quotation marks omitted). Though we need not decide the precise contours of the duty, if any, that employers owe to employees who are subjected to harassment by outsiders such as customers, such a duty can be no greater than that owed with respect to co-worker harassment. *Compare* 29 C.F.R. § 1604.11(d) ("With respect to conduct between fellow employees, an employer *is* responsible for acts of sexual harassment in the workplace where the employer ... knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action.") (emphasis added), *with id.* § 1604.11(e) ("An employer *may also be responsible* for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer ... knows or should have known of the conduct and fails to take immediate and appropriate corrective action. *In reviewing these cases the [EEOC] will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees.*") (emphasis added). *Cf. Folkerson v. Circus Circus Enterprises, Inc.,* 107 F.3d 754, 756 (9th Cir.1997) (holding that "an employer may be held liable for sexual harassment on the part of a private individual, such as the casino patron, where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct").

■ We agree with the district court that Quinn has failed to adduce evidence tending

to show that Green Tree either failed to provide a reasonable complaint procedure or that it knew of her harassment (either by co-workers or customers) and failed to take any action. Accordingly, we find that the court properly declined to consider allegations regarding the conduct of Quinn's coworkers or of Green Tree's customers.

■ In contrast to allegations of harassment by co-workers or customers, employers are presumptively liable for all acts of harassment perpetrated by an employee's supervisor. *Burlington Industries, Inc. v. Ellerth,* —— U.S. ——, ——, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton,* —— U.S. ——, —— ——, 118 S.Ct. 2275, 2292–93, 141 L.Ed.2d 662 (1998).[6] However, the employer will avoid liability if it can plead and prove, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and promptly correct any sexual harassment by such a supervisor, and (2) the employee unreasonably failed to avail herself of any corrective or preventative opportunities provided by the employer or to avoid harm otherwise. *See Burlington Industries,* —— U.S. at ——, 118 S.Ct. at 2270; *Faragher,* —— U.S. at —— – ——, 118 S.Ct. at 2292–93. Under these recent Supreme Court precedents, we presume that Green Tree is responsible for any harassment Fahey and Harwood may have perpetrated against Quinn, because both men acted as Quinn's supervisors.

Under the regime set forth by *Burlington Industries* and *Faragher,* Green Tree would

be entitled to offer evidence in an effort to rebut this presumption, and perhaps to show that Fahey and Harwood's conduct should not be imputed to it. However, because *Burlington Industries* and *Faragher* were decided after the district court rendered its decision—and, indeed, after this appeal was briefed and argued—Green Tree has not endeavored to build a record in support of such an affirmative defense. Accordingly, we assume for purposes of reviewing this summary judgment that all of Fahey and Harwood's alleged harassing acts should be imputed to Green Tree.[7]

### C. Do the Surviving Allegations Amount to Actionable Harassment?

■ The remaining question before us is whether Quinn has alleged cognizable acts—that is, acts said to have been perpetrated by Fahey or Harwood within the applicable limitations periods—that do, in fact, amount to actionable harassment.[8] In other words, we must determine whether the alleged conduct amounts to "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris,* 510 U.S. at 21, 114 S.Ct. 367 (citations and internal quotation marks omitted). Whether an environment is "hostile" or "abusive" depends on the totality of circumstances. *Id.* at 23, 114 S.Ct. 367. Courts must consider a variety of factors including "the frequency of the discriminatory con-

---

**6.** Prior to the Supreme Court's decisions in *Burlington Industries* and *Faragher,* the law of this Circuit held an employer liable for harassment perpetrated by a supervisor only if the plaintiff could prove one of the following:

> [1] the supervisor was at a sufficiently high level in the company, or [2] the supervisor used his actual or apparent authority to further the harassment, or was otherwise aided in accomplishing the harassment by the existence of the agency relationship, or [3] the employer provided no reasonable avenue for the complaint, or [4] the employer knew (or should have known) of the harassment but unreasonably failed to stop it.

*Gallagher,* 139 F.3d at 348.

**7.** If any remand of the harassment cause of action were in order, Green Tree would be entitled to offer evidence in support of the affirmative

defense described in *Burlington Industries* and *Faragher.*

**8.** Although in this case, we first decide which alleged incidents can be attributed to the defendant and only then consider whether this conduct rises to the level of actionable Title VII harassment, we do not mean to suggest that these steps of the inquiry must proceed in this order. Indeed, other cases first determine whether the conduct at issue is actionable before considering whether liability can be attributed to the defendant, *see, e.g., Distasio v. Perkin Elmer Corp.,* 157 F.3d 55 (2d Cir.1998); we do not read such cases, however, to require that sequence either.

768

duct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

■■■■ As a general matter, "isolated remarks or occasional episodes of harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive." *Tomka,* 66 F.3d at 1305 n. 5 (citations omitted); *see Carrero v. New York City Housing Authority,* 890 F.2d 569, 577–78 (2d Cir.1989) (to be actionable, the alleged incidents "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."). However, where the conduct is sufficiently severe, it may alter the plaintiff's conditions of employment without repetition: "*[E]ven a single incident of sexual assault* sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability." *Tomka,* 66 F.3d at 1305 (emphasis added; footnote and citations omitted).

■■■■ In a September 1994 response to interrogatories posed by Green Tree, at a time when she was represented by counsel, Quinn purported to state "each and every fact" upon which she bases her claim of sexual harassment. There she made only untimely allegations against Harwood. Quinn did, however, make two allegations against Fahey that appear to be timely: (1) that he told Quinn she had been voted the "sleekest ass" in the office and (2) that, on another occasion, he "deliberately touched [Quinn's] breasts with some papers that he was holding in his hand." [9] Quinn's hostile work environment claim against the Company accordingly rests on these two alleged incidents.

Accepting as true all of Quinn's allegations that are both timely and attributable to the Company, as we are required to do in light of this case's posture on appeal, we conclude that Quinn has not adduced evidence sufficient to support a finding that she was subject to abuse of sufficient severity or pervasiveness as to "alter the conditions of [her] employment," *Harris,* 510 U.S. at 21, 114 S.Ct. 367. Though the two incidents in question—Fahey's comment, apparently regarding Quinn's posterior, and his use of papers held in his hand to touch her breasts—are obviously offensive and inappropriate, they are sufficiently isolated and discrete that a trier of fact could not reasonably conclude that they pervaded Quinn's work environment. Nor are these incidents, together or separately, of sufficient severity to alter the conditions of Quinn's employment without regard to frequency or regularity.

## II. Retaliatory Discharge

■■■■ Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [such employee] has opposed any practice made an unlawful practice by this subchapter...." 42 U.S.C. § 2000e–3(a). Retaliation claims under Title VII are tested under a three-step burden shifting analysis. *See, e.g., Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1177 (2d Cir.1996); *Tomka,* 66 F.3d at 1308. First, the plaintiff must make out a *prima facie* case of retaliation. *See Tomka,* 66 F.3d at 1308. Second, the defendant then has the burden of articulating a legitimate, non-retaliatory reason for the complained of action. *See id.; see also Gallo v. Prudential Residential Services, L.P.,* 22 F.3d 1219, 1226 (2d Cir.1994) ("Once a plaintiff demonstrates a *prima facie* case of age discrimination, the defendant is obligated to produce evidence 'which, *taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action.'") (quoting *St. Mary's Honor Center v.*

**9.** Quinn's November 1991 letter to Green Tree's main office did relate other instances of putatively harassing conduct allegedly perpetrated by Fahey and Harwood. However, the interrogatory responses—submitted nearly three years later, and at a time when Quinn was represented by counsel—purport to exhaustively catalog her allegations of harassment. As a result, we view these responses as abandoning all allegations that were (1) made previously and (2) not mentioned in the interrogatory responses. We have not been made aware of any attempt on Quinn's part to revive any such allegations.

*Hicks,* 509 U.S. at 509, 113 S.Ct. 2742 (emphasis in original)).Third, if the defendant meets its burden, plaintiff must adduce evidence "sufficient to raise a fact issue as to whether [the employer]'s reason was merely a pretext" for retaliation. *See Tomka,* 66 F.3d at 1309.

### A. Prima Facie Case

 To establish a *prima facie* case of retaliation, an employee must show "[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action." *Id.* at 1308.

 As noted earlier, Quinn claims that Green Tree fired her in retaliation for having filed a complaint with the DHR. To prove that the filing of her particular complaint with the DHR on December 27, 1991 was a protected activity, Quinn need not establish that she successfully described in that complaint conduct amounting to a violation of Title VII. *See Manoharan v. Columbia Univ. College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988). She need only demonstrate that she had a *"good faith, reasonable belief* that the underlying challenged actions of the employer violated the law." *Id.* (emphasis added; internal quotation marks and citation omitted); *accord Reed,* 95 F.3d at 1178. Thus, it is possible for an employee to reasonably believe that specified conduct amounts to harassment, even when that conduct would not actually qualify as harassment under the law.

 In her deposition, Quinn stated that she consulted with a DHR representative as early as July 1991 and was informed of the law of hostile work environment sexual harassment. Subsequently, in a letter received by the Company on November 21, 1991, Quinn complained of alleged sexual harassment; this letter also informed the Company that she planned to file an identical complaint with the DHR on December 23, 1991. Quinn, in fact, filed her complaint with the DHR on December 27, 1991. Though we held above that Quinn has failed to adduce facts sufficient to establish Green Tree's lia-bility for sexual harassment, we are satisfied that her complaints of sexual harassment—filed initially with the Company in November 1991 and then with the DHR in December 1991—included evidence sufficient to sustain a good faith, reasonable belief that Green Tree stood in violation of the law. *Cf. Reed,* 95 F.3d at 1179–80 (upholding jury verdict for *retaliation,* where plaintiff had adduced sufficient evidence of a "good faith, reasonable belief," in the form of testimony regarding two arguments in which co-workers had used offensive sex-charged language). Accordingly, Quinn has established the first prong of her *prima facie* case.

 Green Tree's termination of Quinn satisfies the second prong of the *prima facie* case—"an employment action disadvantaging the plaintiff," *Tomka,* 66 F.3d at 1308—as her discharge clearly amounted to an adverse employment action. Additionally, because Quinn's discharge came less than two months after she filed a complaint with Green Tree management and just ten days after she filed a complaint with the DHR, the third prong of the *prima facie* case—"a causal connection between the protected activity and the adverse employment action," *id.*—is satisfied as well. *See Manoharan,* 842 F.2d at 593 ("Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."). Therefore, Quinn adduced evidence establishing a *prima facie* case of retaliation, thus shifting the burden to Green Tree to point to evidence supporting a legitimate, non-retaliatory reason for her termination.

### B. A Legitimate, Non-retaliatory Reason for the Adverse Employment Action

 Green Tree contends that it discharged Quinn due to her poor performance. This explanation is supported by (1) a handwritten memorandum to the file, drafted by Harwood in September 1991, detailing the complaints of clients and co-workers about Quinn's rudeness; (2) Green Tree's evaluation of Quinn, prepared by Fahey and Harwood in November 1991, reflecting Quinn's need to improve her interpersonal skills; and

(3) an affidavit (dated October 23, 1995) from a client complaining about Quinn's attitude. This offer of proof satisfies Green Tree's burden of articulating a legitimate, non-retaliatory reason for terminating Quinn, and pointing to evidence to support that proffered reason.

### C. Pretext

 Accordingly, we must determine whether the record contains evidence to support Quinn's contention that Green Tree's proffered reason was merely pretext for retaliation—evidence sufficient to require a trial before a trier of fact. We are satisfied, upon a review of this record, that an issue of fact remains on the question of retaliatory discharge. Quinn has proffered evidence suggesting a strong temporal correlation between her complaints to the Company and to the DHR, on the one hand, and her termination, on the other. Nearly all of the record evidence supporting the Company's asserted non-retaliatory reason for discharge both was generated by two of Quinn's alleged harassers—Fahey and Harwood—and followed her initial inquiry with the DHR regarding sexual harassment. Construing the record most favorably to Quinn, as we are required to do in evaluating the district court's grant of Green Tree's motion for summary judgment, *see Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, we conclude that there is a sufficient basis for a trier of fact to doubt the persuasiveness of the company's proffered evidence and ultimately to find that the reasons offered by the Company for Quinn's dismissal were pretextual. In so concluding, we intimate no view on the conclusion that a fact-finder might actually make on the disputed and material claim by Quinn that she was fired because she filed a claim of discrimination with the DHR.

### Conclusion

For the foregoing reasons:

(1) We affirm the district court's order granting summary judgment in favor of Green Tree, to the extent that it disposed of Quinn's harassment claim.

(2) We vacate the judgment to the extent that it dismissed plaintiff's claim for retaliatory discharge.

(3) We remand the cause to the district court for proceedings consistent with this opinion.