Joann LA MARCO, Plaintiff,

v.

NEW YORK STATE NURSES ASSO-
CIATION, Martha Orr, and Rob-
ert Liseniewski, Defendants.

No. 00–CV–0990.

United States District Court,
N.D. New York.

Nov. 2, 2000.

DeLorenzo, Pasquariello Law Firm, Schenectady NY (Thomas E. DeLorenzo, of counsel), for Plaintiff.

Pisano, Mills Law Firm, New York City (Richard S. Mills, of counsel), for Defendants.

## MEMORANDUM—DECISION & ORDER

McAVOY, District Judge.

Plaintiff Joann La Marco ("Plaintiff") commenced the instant action pursuant to Title VII, 42 U.S.C. § 2000e, *et. seq.,* and the New York Human Rights Law ("HRL"), N.Y.Exec.Law. § 296, claiming that: (1) she was subjected to a hostile work environment; and (2) that she was retaliated against for engaging in protected activity. Presently before the Court is Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) seeking dismissal of the Complaint in its entirety or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56.

## I. BACKGROUND

On January 30, 1992, Plaintiff was hired by the Defendant New York State Nurses Association ("NYSNA") as an administrative assistant. On her first annual performance review in January 1993, Plaintiff received an outstanding evaluation and was rewarded with a salary increase and education differential. In November 1993, the NYSNA hired Defendant Robert Lesniewski as its Director of Administrative Services. Lesniewski became Plaintiff's supervisor.

In January 1994, Plaintiff received another salary increase and education differential. In August 1994, Plaintiff was promoted to the position of Administrative Assistant to Lesniewski and received another salary increase. In January 1995, Lesniewski gave Plaintiff a very positive performance evaluation and Plaintiff was again given a salary increase and education differential.

In August 1995, Plaintiff was promoted to the position of Executive Assistant to Lesniewski, NYSNA's Chief Financial Officer and Director of Administrative Services, and was also named conference center coordinator. In conjunction with this promotion, Plaintiff again received a salary increase. In 1996, Lesniewski again gave Plaintiff a very positive performance evaluation and she received another salary increase and education differential. In April 1996, Plaintiff received another increase to her salary. In June 1996, Plaintiff's position was upgraded and, thus, she was again given a salary increase. Sometime in 1996, Plaintiff was given the title of Human Resource and Administrative Specialist. In his January 1997 performance evaluation, Lesniewski gave Plaintiff another positive review. Once again, Plaintiff received a salary increase.

During this time, Plaintiff and Lesniewski apparently became very close friends. Lesniewski provided significant emotional support for Plaintiff. This is evidenced by notes from Plaintiff to Lesniewski stating that he was her "best friend" and thanking him for being there for her and for "caring about [her]." Def.Ex. 22.

Plaintiff alleges that, in 1997, Lesniewski made an inappropriate sexually-related remark regarding another employee's

physical appearance.[1] Plaintiff further alleges that, also in 1997, a delivery boy delivered food to the NYSNA and made a flattering comment regarding Plaintiff's physical appearance. Plaintiff later stated that she found it hard to believe that the delivery boy found her attractive in light of her age. Approximately one or two days later, Lesniewski took Plaintiff aside and told Plaintiff that she was very pretty and came to tears stating that "when you come in here ... you take my breath away." Lesniewski also purportedly stated that "I don't want you to think that I'm just saying this to get down your pants." Lesniewski made further remarks about Plaintiff's appearance and that he did not like the thought of her going home alone to an empty house.

In December 1997, Plaintiff received a college degree. Lesniewski contributed to the expenses of giving her a surprise graduation party, attended the party, and gave her an expensive watch as a graduation present.

In January 1998, Lesniewski gave Plaintiff another positive performance evaluation and she received yet another raise. This same month, Plaintiff and Lesniewski were traveling in a car together when they apparently entered into a wager regarding who could forego unhealthy foods for the longest period of time.[2] When Plaintiff stated that she did not wish to bet dinner, Lesniewski apparently responded "how about the loser sleeps with the other one." Plaintiff allegedly did not respond and the two agreed on a monetary wager.

Effective February 1, 1998, Plaintiff was promoted to Director of Human Resources and given another raise. In February 1998, Plaintiff complained to Lesniewski that the human resources department was not being kept apprised of new hires. Lesniewski responded by yelling, "cool your goddamn jets." Shortly thereafter,

when Plaintiff has helping Lesniewski arrange furniture, "Lesniewski began slamming tables and throwing chairs as a result of his earlier outburst." In another incident during this time frame, an individual asked Plaintiff how her scuba lessons were going. Plaintiff confronted Lesniewski and asked him not to discuss personal topics with others. Also in February 1998, Lesniewski wrote Plaintiff a letter expressing that he was upset about the change in their relationship. Lesniewski wrote that he had "been totally ineffectual at work lately because [he] end[s] up staring out the window wondering what the heck [he] could have done to poison [the] friendship." Def.Ex. 29. Plaintiff responded to Lesniewski that she thought the letter was "sick and demented."

After returning from a vacation in March 1998, Plaintiff confronted Lesniewski and told him that she believed he was obsessed with her, that she was upset over the value of the watch he gave her, that she was uncomfortable being near him, and that she would sue him if he engaged in any sexually harassing conduct. Plaintiff also stated that she would never again travel alone with Lesniewski and that if she ever saw him near her home, she would call the police. Plaintiff reminded Lesniewski of his prior inappropriate actions towards her, including the wager they made in the car in January 1998 and Lesniewski's comments to her after the delivery boy incident. Lesniewski apparently became angered and called Plaintiff a "lying bitch." Plaintiff also stated that she would go to Defendant Martha Orr or the Board of Directors to protect her job. After this time, Lesniewski repeatedly attempted to contact Plaintiff to discuss the breakdown of their friendship. Plaintiff refused each such attempt.

By letter dated July 13, 1998, Lesniewski informed Orr that Plaintiff had accused him of sexual harassment. That same day,

---

1. Plaintiff alleges that Lesniewski stated that a particular employee "may be a bitch, but she's got a nice little ass."

2. This was similar to an earlier monetary bet that Plaintiff had won.

Plaintiff formally complained to Orr that Lesniewski had sexually harassed her. In response, Orr contacted a consulting firm specializing in employment dispute resolution. The firm investigated the La Marco—Lesniewski situation and drafted a report.

As a result of the investigation, Orr reprimanded Lesniewski for engaging in inappropriate behavior. Orr also relocated Lesniewski's office away from Plaintiff's, ordered Lesniewski not to have personal interaction with Plaintiff, but to limit interaction with her to business-related purposes only, and relieved Plaintiff of her duties as assistant to Lesniewski (as Welfare Plan Administrator) so the two would not have to travel together. Orr also changed the reporting structure such that she, rather than Lesniewski, was personally responsible for supervising Plaintiff.

In August 1998, Plaintiff asked to be removed from the Employee Safety Committee on which Lesniewski also served. Orr did not immediately respond to Plaintiff's request. Ultimately, Orr left the decision to Plaintiff who decided to discontinue serving on the committee.

In or about October 1998, Lesniewski asked Plaintiff if she would like to attend a work-related function in Las Vegas. Plaintiff complained to Orr of this invitation because she had previously indicated that she did not want to travel with Lesniewski. Orr responded that Plaintiff should be objective and that it was her decision whether she wished to attend the function. Plaintiff opted not to go.

During her work for NYSNA, Plaintiff accrued significant amounts of compensatory time. In early to mid-September 1998, Orr advised Plaintiff that company policy did not allow for such excessive amounts of compensatory time and that Plaintiff would have to use the compensatory time until it was reduced to an acceptable level. When necessary, Orr nevertheless approved Plaintiff's accumulation of additional compensatory time.

Also in September 1998, Orr requested that Plaintiff review and comment on a new sexual harassment policy and complaint procedure to be adopted by the NYSNA. In January 1999, Plaintiff received a good performance appraisal (which was self-prepared, but approved by Orr) and, in February 1999, a salary increase.

In January 1999, Lesniewski called all employees whose surnames began with the letters "A" through "L," including Plaintiff, to tell them that they could sleep in the next morning because the office would open late due to inclement weather.

On October 18, 1999, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. In February 2000, Plaintiff received another salary increase. On February 15, 2000, Plaintiff resigned from the NYSNA claiming that she could not tolerate working in a hostile work environment. On April 21, 2000, the EEOC issued a right to sue letter, which was followed shortly thereafter by the commencement of the instant lawsuit.

Presently before the Court is Defendants' motion pursuant to FED.R.CIV.P. 12 or, in the alternative, FED.R.CIV.P. 56, seeking dismissal of the Complaint in its entirety.

## II. DISCUSSION

### A. Conversion to Summary Judgment

The Court may convert a motion to dismiss to one for summary judgment in accordance with Rule 56 "[i]f matters outside the pleadings are presented to and not excluded by the court." *See* FED.R.CIV.P. 12(b). Here, Defendants moved to dismiss pursuant to Rule 12 or, in the alternative, for summary judgment. In support of their motion, Defendants submitted extensive evidentiary support and affidavits. Defendants also submitted a statement of material facts in accordance with N.D.N.Y.L.R. 7.1(a)(3), which is required

only for summary judgment motions. Thus, Plaintiff was on notice that the Court might entertain a summary judgment motion. In opposition to Defendants' motion, Plaintiff submitted a counter-statement of material facts and also submitted affidavits and materials outside the pleadings.

Because the parties were on notice of a potential summary judgment motion and had a reasonable opportunity to present all material made pertinent to such a motion by Rule 56, the Court will consider the material submitted outside the pleadings and treat Defendants' motion as one for summary judgment in accordance with Rule 56. *See Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000); *Leonard F. v. Israel Discount Bank of New York,* 199 F.3d 99, 106 (2d Cir.1999).

### B. Summary Judgment Standard

The standard for summary judgment in employment discrimination cases is well-settled and need not be restated here. This Court has set forth the appropriate standard to be applied in numerous published decisions, *see Roman v. Cornell Univ.,* 53 F.Supp.2d 223, 232–33 (N.D.N.Y. 1999); *Phipps v. New York State Dep't of Labor,* 53 F.Supp.2d 551 (N.D.N.Y.1999); *Riley v. Town of Bethlehem,* 44 F.Supp.2d 451, 458 (N.D.N.Y.1999), and will apply the same standard discussed in those cases to the pending motion for summary judgment.

### C. Title VII Claims Against the Individual Defendants

■ It is well-settled that Title VII imposes liability upon employers; not individuals. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1314 (2d Cir.1995); *see also Genas v. State of New York Dep't of Correctional Servs.,* 75 F.3d 825, 829 (2d Cir. 1996) ("Title VII imposes no liability on individuals."). Accordingly, the Title VII

claims against Orr and Lesniewski must be dismissed.

### D. Timeliness of the Allegations

Pursuant to 42 U.S.C. § 2000e–5(e), a charge of discrimination must be filed within 300 days "after the alleged unlawful employment practice occurred." *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir.1998). "This requirement functions as a statute of limitations in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court." *Id.* (internal citations omitted).

Because Plaintiff filed her charge of discrimination with the EEOC on October 18, 1999 at the earliest,[3] her Title VII cause of action will not include any incidents that occurred prior to December 23, 1998, unless she can demonstrate that she falls under the continuing violation exception.

■ "The continuing violation doctrine allows a plaintiff in certain circumstances to recover on the basis of an ongoing policy or practice of illegal activity initiated prior to the limitations period." *Pollis v. New Sch. For Soc. Research,* 132 F.3d 115, 118 (2d Cir.1997). "The continuing-violation exception 'extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations.'" *Quinn,* 159 F.3d at 765 (quoting *Annis v. County of Westchester,* 136 F.3d 239, 246 (2d Cir.1998)). "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.'" *Id.* (quoting *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993), *cert. denied,* 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994)). "However, a continuing violation may be found 'where there is proof of

---

**3.** The EEOC's "received" stamp indicates that the charge of discrimination was filed on October 20, 1999.

specific ongoing discriminatory polices or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.' " *Id.* (quoting *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994)). The continuing violation doctrine is disfavored and will be applied only upon a showing of compelling circumstances. *See Findlay v. Reynolds Metals Co.,* 82 F.Supp.2d 27, 37 (N.D.N.Y.2000) (McAvoy, J.) (and cases cited therein).

■ Under the facts and circumstances of this case, the continuing violation doctrine does not apply. There are no allegations or evidence of a specific ongoing discriminatory policy or practice. Similarly, there is no evidence that the NYSNA permitted specific and related instances of discrimination to occur for such a prolonged period of time as to amount to a discriminatory policy or practice.

The undisputed facts reveal isolated incidents of arguably inappropriate behavior by Lesniewski toward Plaintiff. It is questionable whether much of Lesniewski's conduct can be considered gender-based discrimination. Although there is evidence that Lesniewski may have made some inappropriate sexual remarks towards Plaintiff, that Lesniewski and Plaintiff's relationship soured, that Lesniewski repeatedly attempted to talk with Plaintiff regarding their friendship, and that there was some hostility and perhaps hurt feelings between the two, there is no evidence of ongoing gender-based discrimination triggering the continuing violation exception. Further, the evidence reveals that, upon receiving a complaint from Plaintiff, the NYSNA took immediate steps to avoid any future incidences by retaining an outside consulting firm to investigate the matter and took steps to ensure that there would be no future instances of inappropriate behavior. Thus, the Court finds that the continuing violation exception does not apply here and any alleged instances of

sexual harassment occurring before December 23, 1998 are time-barred.

## E. Hostile Work Environment

■ Title VII is violated when sexual harassment is so severe or pervasive as to alter the conditions of the Plaintiff's employment and create an abusive working environment. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (citing *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986)); *Brennan v. Metropolitan Opera Ass'n, Inc.,* 192 F.3d 310 (2d Cir.1999); *Richardson v. New York State Dept. of Correctional Services,* 180 F.3d 426, 436 (2d Cir. 1999). "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor,* 106 S.Ct. at 2404 (1986); *see also Williams v. County of Westchester,* 171 F.3d 98, 100 (2d Cir.1999).

■ To be actionable, "[t]he conduct alleged must be severe and pervasive enough to create an environment that 'would reasonably be perceived, and is perceived, as hostile or abusive.' " *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997); *see also Faragher,* 118 S.Ct. at 2283; *Brennan,* 192 F.3d at 318. In determining whether an environment is sufficiently hostile or abusive, courts examine the totality of the circumstances, *see Richardson,* 180 F.3d at 437, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating or a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance; and (5) what psychological harm, if any, resulted. *See Faragher,* 118 S.Ct. at 2283; *Richardson,* 180 F.3d at 437.

■ "Simple teasing, offhand comments, and isolated incidents (unless extremely serious), will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (internal citations and

quotations omitted); *see also Richardson,* 180 F.3d at 437. "In order to meet [her] burden, the plaintiff must show 'more than a few isolated incidents of [gender-based] enmity,' 'there must be a steady barrage of opprobrious [gender-based] comments,' evidence solely of 'sporadic [gender-based] slurs' does not suffice." *Williams,* 171 F.3d at 100 (quoting *Snell v. Suffolk County,* 782 F.2d 1094, 1103 (2d Cir.1986); *Schwapp,* 118 F.3d at 110); *see also Brennan,* 192 F.3d at 318; *Richardson,* 180 F.3d at 437. Title VII is not to be used as "a general civility code," but is actionable only for conduct sufficiently "extreme to amount to a change in the terms and conditions of employment." *Williams,* 171 F.3d at 100. Pervasiveness and severity are independent and equal grounds on which to support violations of Title VII. *See Faragher,* 118 S.Ct. at 2283 (extremely serious isolated incidents may be actionable); *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (there must be conduct that is "sufficiently severe or pervasive"); *see also Witt v. Roadway Express,* 136 F.3d 1424, 1432 (10th Cir.), *cert. denied,* 525 U.S. 881, 119 S.Ct. 188, 142 L.Ed.2d 153 (1998); *Quinn,* 159 F.3d at 768; *Tomka,* 66 F.3d at 1305; *Torres v. Pisano,* 116 F.3d 625, 631 n. 4 (2d Cir.), *cert. denied,* 522 U.S. 997, 118 S.Ct. 563, 139 L.Ed.2d 404 (1997).

To establish a hostile work environment claim, "[a] plaintiff must also demonstrate that she was subjected to the hostility because of membership in a protected class. In other words, an environment which is equally harsh for both men and women ... does not constitute a hostile working environment under the civil rights statutes." *Brennan,* 192 F.3d at 318.

■ Excluding the time-barred incidents (those that are alleged to have occurred prior to December 23, 1998), the Court finds that no fair-minded jury could reasonably conclude that Plaintiff was subjected to a hostile work environment. The

following incidents occurred after December 1998:

(1) Plaintiff was required to use up her compensatory time and was not permitted to accumulate additional compensatory time absent extraordinary circumstances.

(2) the sexual harassment training and implementation of a new sexual harassment policy were delayed until February 1999.

(3) most of the NYSNA staff, including Lesniewski and Plaintiff were required to attend a sexual harassment training seminar in February 1999.

(4) Plaintiff continued to have to work with Lesniewski in connection with the conference center activities.

(5) Lesniewski called all employees whose surnames began with the letters "A" through "L," which included Plaintiff, sometime in January 1999 to tell them they could sleep in the next day because the office would be opening late due to inclement weather.

(6) Although a full-time person was hired to run the conference center, Lesniewski insisted that Plaintiff continue to market the conference center for six months.

(7) Plaintiff did not receive a performance appraisal after she began to report directly to Orr.

(8) Plaintiff continued to have to deal with Lesniewski in connection with business matters.

(9) Orr expressed her disappointment in Plaintiff's filing a charge of discrimination with the EEOC.

(10) Lesniewski sent Plaintiff numerous e-mails and one voice mail reminding her of a meeting with a vendor. After Plaintiff requested that Lesniewski stop asking her the same questions over and over, Lesniewski responded "Go to hell, bitch. I'm sick of this shit."

First, except for Lesniewski's reference to Plaintiff as a "bitch," none of the above-identified incidents can reasonably be con-

sidered to be gender-based discrimination. There is no indication in the record that these other acts were taken because of Plaintiff's gender or that they are the type of conduct that gives rise to a sexual harassment claim. Except for the "bitch" statement, all of the above-identified conduct is gender-neutral. *See Brennan,* 192 F.3d at 318. Although there may have been some animosity and tension between Lesniewski and Plaintiff, this does not automatically transform all of his behavior towards her into gender-based discrimination. Title VII does not protect all work relationships even if they are between a male and female. Title VII only protects against intentional, gender-based discrimination.

Second, even considering the totality of the circumstances and the history of Plaintiff and Lesniewski's relationship (including the pre-December 1998 conduct and the fact that Lesniewski referred to Plaintiff as a bitch), it cannot be said that Plaintiff was subjected to any particularly severe incidents of sexual harassment or that she was subjected to a pervasive course of harassment. At most, a fair-minded jury could reasonably conclude that Lesniewski harbored feelings for Plaintiff, that he made some isolated inappropriate sex-related remarks in the past, that he discontinued such sex-based conduct in 1998, that he made one isolated remark in 1999 (the "bitch" comment), and that, thereafter, while their relationship could be characterized as hostile or less than cordial, it was not sexually harassing. While Lesniewski may have repeatedly attempted to contact Plaintiff in person or via e-mail, this conduct, although potentially annoying, simply is not sexual harassment. There is no evidence that Lesniewski continually made inappropriate sexual remarks or gestures to Plaintiff, made repeated sexual advances or innuendo, or otherwise engaged in behavior indicative of sexual harassment.

Third, none of these incidents are physically threatening or particularly humiliating. Again, although Plaintiff personally may not liked having to use up her compensation time, having to work with Lesniewski, having Lesniewski tell her that she did not have to come into work in the morning, or anything else identified above, from an objective standpoint, the complained of instances were not particularly offensive or humiliating such that it can be said that Plaintiff was subjected to a hostile work environment.

Fourth, none of the above-discussed conduct unreasonably interfered with Plaintiff's work performance. Although there were a few isolated pre-December 23, 1998 incidents where Lesniewski may have given Plaintiff misinformation, Plaintiff's job was not materially affected thereby. Plaintiff continued to receive pay increases and Orr concurred with Plaintiff's overall positive self-evaluation. In any event, considering the totality of the circumstances, there is no evidence that Plaintiff was subjected to a steady barrage of gender-based discriminatory conduct.

Simply stated, the interpersonal problems between Lesniewski and Plaintiff, even though between a male and a female, do not rise to level of a hostile work environment. *See, e.g., Hollander v. Amer. Cyanamid Co.,* 172 F.3d 192, 201–202 (2d Cir.1999) (plaintiff terminated due to poor interpersonal skills). Spite and personal hostility alone between persons of the opposite sex is not the type of conduct Title VII seeks to eradicate. *See, e.g., Fisher v. Vassar College,* 114 F.3d 1332, 1337 (2d Cir.1997) (noting that a person's actions such as "back-scratching, log-rolling, horse-trading, institutional politics, envy, nepotism, spite, or personal hostility" may be unbecoming or small-minded, but non-discriminatory.), *cert. denied,* 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). Because Plaintiff was not subjected to a sufficiently pervasive or severe hostile environment on account of her gender, her hostile work environment claims (the First Cause of Action) must be dismissed.

## F. Retaliation

Plaintiff next claims that she was retaliated against for engaging in protected activity. Plaintiff claims that after she complained to Orr of sexual harassment in July 1998, Defendants retaliated against her by refusing to fire Lesniewski, not requiring Lesniewski to undergo sexual harassment training, failing to implement all of the recommendations of the outside consulting firm, taking certain job responsibilities away from Plaintiff, prohibiting Plaintiff from accruing additional compensation time, requiring Plaintiff to lower her accumulated compensation time to acceptable levels, placing Plaintiff on an employee morale committee on which Lesniewski also served, and expressing their disappointment that Plaintiff filed a charge of discrimination.

■ To establish a prima facie case of retaliation, plaintiff must demonstrate that the employee was engaged in protected activity, that the employer was aware of that activity, that the employee suffered adverse employment decisions, and that there was a causal connection between the protected activity and the adverse employment action. *See Richardson,* 180 F.3d at 443; *Quinn,* 159 F.3d at 769; *Manoharan v. Columbia Univ. College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988).

### 1. Protected Activity

■ Plaintiff's complaint to Orr in July 1998 constituted protected activity of which Defendants were aware.

### 2. Adverse Employment Action

As the Second Circuit has recently instructed:

A plaintiff sustains an adverse employment action if he or she endures a "materially adverse change" in the terms and conditions of employment. *See* [*Richardson*], 180 F.3d at 446 (relying on *Crady v. Liberty Nat. Bank and Trust Co.,* 993 F.2d 132, 136 (7th Cir.

1993)). To be "materially adverse" a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady,* 993 F.2d at 136. "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Id.; see Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir.1997).

*Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 639 (2d Cir.2000) (internal footnote omitted).

■ The failure to fire Lesniewski or require him to undergo sexual harassment training, the expression of disappointment over Plaintiff's filing of a charge of discrimination, Defendants' alleged failure to implement or enforce all of the consulting firm's recommendations, and placing Plaintiff on an employee moral committee on which Lesniewski and three other employees served (which occurred in November 1998 and, thus, is time-barred) simply did not materially impact the terms or conditions of Plaintiff's employment. Thus, these incidents do not constitute adverse employment action and may not form the basis of a retaliation claim.

■ Similarly, the alteration of some of Plaintiff's job responsibility does not constitute retaliation. As previously noted, to constitute an adverse employment action, any change must be "material." The evidence demonstrates, however, that Plaintiff retained her title as Director of Human Resources and she received the same pay and benefits.[4] The fact that Plaintiff was relieved of her duties as assistant to Lesniewski does not advance her retaliation claim because: (1) it occurred prior to December 23, 1998 and, thus, is time-barred; (2) that action was

---

4. The issue of compensatory time will be discussed *infra.*

taken in response to the allegations of sexual harassment and in an effort to alleviate the situation and avoid any future problems; and (3) it did not constitute a material change in her job responsibilities. Plaintiff offers no evidence that this loss of duties resulted in a demotion, loss of salary or material loss of benefits, a less distinguished title, significantly reduced material responsibilities, or otherwise constituted an adverse employment action. With respect to her removal from the Employee Safety Committee, which is another time-barred incident, this was done at Plaintiff's request to reduce those instances in which she had to work with Lesniewski. Her removal from this committee also did not work a material alteration to the terms and conditions of her employment.

Finally, there is the issue of the compensatory time. Pursuant to company policy "[a]ccrued comp time must be used no later than the last day of the month following the month in which it was earned. Exceptions to this policy may be considered by the appropriate Program Director or Department Head." Def. Ex. 39. Despite this policy, prior to September 1998, when Plaintiff was under Lesniewski's supervision, she was permitted to accrue substantial amounts of compensatory time. When, in September 1998, Plaintiff began reporting directly to Orr, Orr advised her that should could not accrue additional compensatory time except in exceptional circumstances and that Plaintiff would have to use her compensatory time to reduce it to acceptable levels.

■ This incident, however, is time-barred. Orr is purported to have first advised Plaintiff to reduce her compensatory time and that she would not be purported to accrue additional compensatory time absent extraordinary circumstances in early to mid-September 1998. This, of course, is prior to December 23, 1998. Furthermore, because Orr acted in accordance with company policy and Plaintiff was permitted to accumulate additional compensatory time when necessary, it cannot be said that this constituted an adverse employment action.

### 3. Causal Connection

■ Even assuming the compensatory time issue is not time-barred (which it is) and constituted an adverse employment action (which it does not) and that Plaintiff could establish her *prima facie* case of retaliation, applying the familiar *McDonnell Douglas* burden shifting paradigm, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Court finds that Plaintiff has failed to demonstrate sufficient evidence from which a fair-minded jury could reasonably conclude that Defendants retaliated against Plaintiff for filing an internal complaint of sexual harassment against Lesniewski.

"A causal connection may be established either 'indirectly by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant.'" *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir.1991) (quoting *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115, *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987)); *see also Quinn*, 159 F.3d at 769; *Manoharan*, 842 F.2d at 593. Mere temporal proximity alone will not necessarily satisfy this requirement. *See Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir.1990) (3 months time period between protected activity and adverse action did not satisfy causal connection); *see also Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir.1999); *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 399 (7th Cir.1999); *Rizzo–Puccio v. College Auxiliary Services*, 71 F.Supp.2d 47, 60 (N.D.N.Y.1999) (McAvoy, J.), *aff'd*, 216 F.3d 1073 (2d Cir. 2000).

Here, Plaintiff has no evidence of direct discriminatory intent, but, rather, attempts to prove her case by relying on the temporal proximity between her complaint against Lesniewski (July 13, 1998) and the time when she was instructed to use her compensatory time and told that she could not accumulate additional compensatory time absent extraordinary circumstances (on or about September 7, 1998). Plaintiff also attempts to demonstrate the causal connection by showing that other similarly situated employees were treated differently because the NYSNA offered to buy back their excess compensatory time.

In response, Defendants offer legitimate, non-discriminatory reasons for taking action with respect to Plaintiff's compensatory time. First, company policy precluded employees from accumulating too much compensatory time. Second, Defendants note that Plaintiff's supervisor changed from Lesniewski to Orr in order to prevent Lesniewski (the alleged harasser) from having supervisory authority over Plaintiff. According to Orr's affidavit, she routinely enforced the compensatory time policy as to those persons whom she supervised. *See* Orr. Reply Aff. at ¶ 6. Orr stated that it was important not to have employees accumulate too much compensatory time because it represented a fiscal threat to the NYSNA's budget. *See id.* at ¶ 5. Third, Defendants note that Orr did approve certain compensatory time for Plaintiff during the period of December 1999 to February 2000. Fourth, Defendants assert that they could offer to buy back compensatory time in only those years when the budget so permitted, that the 1998 budget allowed for a limited amount of buy backs, that Orr, in her discretion, decided to buy back some compensatory time from four out of forty-nine other employees who accumulated large amounts of compensatory time, that the decision to buy back compensatory time in 1998 was made prior to the time Plaintiff complained of sexual harassment, and that the 1999 budget did not allow for any compensatory time buy backs.

Having set forth legitimate, non-discriminatory reasons for its actions, any presumptions of discrimination drop out of the case, and the burden is on Plaintiff to prove intentional discrimination by a preponderance of the evidence. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000). One way Plaintiff may prove such discrimination is by showing that the reasons offered by Defendants are false. *See id.*

There is no evidence in the record, including that offered in support of the *prima facie* case, tending to suggest that the reasons offered by Defendants are false or are not the real reasons for their actions. *See Reeves,* 530 U.S. at ——, 120 S.Ct. at 2106. Thus, the undisputed evidence demonstrates that company policy prohibited the substantial accumulation of compensatory time and that all similarly situated employees (that is, all employees whom Orr learned had accumulated significant amounts of compensatory time) were treated identically, were not permitted to accumulate substantial amounts of compensatory time, and were required to undertake reasonable efforts to reduce their accumulated compensatory time. Further, in light of the unrefuted evidence that Defendants offered to buy back compensatory time from certain employees in 1998 prior to the time Plaintiff complained about Lesniewski, it cannot be said that she was treated differently than similarly situated employees because of her complaint. Finally, as previously noted, Orr did permit Plaintiff to accrue some additional compensatory time after September 1998. Plaintiff offers no evidence that any other employees' compensatory time was bought back or that she was otherwise treated differently than similarly situated employees after she complained about Lesniewski. Given the lack of any evidence, direct or circumstantial, tending to suggest that Defendants acted because Plaintiff filed a

complaint against Lesniewski, Defendants are entitled to summary judgment.

## III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN ITS ENTIRETY. Having dismissed Plaintiff's federal claims at this early stage of the litigation, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Castellano v. City of New York,* 142 F.3d 58, 74 (2d Cir.), *cert. denied,* 525 U.S. 922, 119 S.Ct. 276, 142 L.Ed.2d 228 (1998). Accordingly, Plaintiff's Complaint is DISMISSED and the Clerk of the Court is directed to close the file in this matter.

**IT IS SO ORDERED.**