**Arlen CARR, Plaintiff,**

v.

**WESTLB ADMINISTRATION, INC., Defendant.**

**No. 99 CIV. 4408(CBM).**

United States District Court, S.D. New York.

Oct. 24, 2001.

---

12.  *See id.* at 269–70, 112 S.Ct. 1311.

Josephine Lauriello, Goldweber, Lauriello & Epstein, LLP, New York City, for Plaintiff.

Joel E. Cohen, McDermott, Will & Emery, New York City, for Defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

### I. Introduction

Plaintiff Arlen Carr ("Carr") filed this action against his employer, defendant WestLB Administration ("WestLB" or "Bank") in June 1999. In his complaint, Carr alleged (1) that WestLB discriminated and retaliated against him due to his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and the New York State Human Rights Law (NYSHRL), N.Y. Exec. Law § 296; (2) that WestLB discriminated and retaliated against him due to his religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000–e *et seq.*, and the NYSHRL; and (3) causes of action against WestLB for infliction of emotional distress.

After the parties had completed discovery, defendant WestLB moved for summary judgment pursuant to Fed.R.Civ.P. 56. The parties submitted memoranda of law and supporting materials and the court heard oral argument on the motion on September 6, 2001. At the close of oral argument, the court issued an Order from the bench:

(1) granting the defendant's motion for summary judgment as to the plaintiff's claims of intentional infliction of emotional distress;

(2) granting the defendant's motion for summary judgment as to the plaintiff's age discrimination claims for failure to make out a prima facie case;

(3) recognizing the withdrawal of the plaintiff's claim of religious discrimination; and

(4) granting the defendant's motion for summary judgment as to the plaintiff's retaliation claims for failure to state a prima facie case.

This Opinion sets forth the reasons for the court's Order.

### II. Factual Background

Unless otherwise indicated, the following facts are undisputed. Plaintiff, Mr. Carr, was born on September 5, 1946, and is of Jewish descent. He was hired by WestLB in 1975 as a computer operator in the

Bank's New York office in the Information Technology Department ("I.T."), a division of the Bank's Information Services and Operations Department ("I.S.O."). By July 1992 he had been promoted to the level of Vice President and was primarily responsible for the Bank's data center, computer mainframe, and telecommunications systems.

In 1993 the Bank started to implement an internal reorganization plan in an effort to become more cost efficient. As part of this plan, the Bank's regional data centers were physically relocated to Germany (the location of the Bank's parent) and the New York office's mainframe computer was also moved to Germany. While much of Mr. Carr's work with the mainframe could be performed remotely from the New York office, other responsibilities with regard to the mainframe started to be transferred to the home office. At the same time, the New York office began to expand in size and hired more traders and support staff, placing increased demands on the Bank's telecommunications systems.

Around the same time, the Bank hired Peter Hull as Mr. Carr's immediate supervisor. Mr. Hull's title was also Vice President. In late 1993, Mr. Hull gave Mr. Carr a positive "Interim Appraisal" and in March 1995 Mr. Carr received an annual bonus of $15,000. In June 1995 Mr. Carr received another satisfactory evaluation from Mr. Hull.

In January 1995 J.J. Sendelbach was hired as Managing Director of the Bank's I.S.O. Department. Mr. Hull reported to Mr. Sendelbach. Mr. Sendelbach had a different vision of how the department should be run and he began to restructure it, ostensibly to keep pace with rapid recent developments in communications technology. He also verbally expressed his belief to Mr. Hull and Mr. Carr that Mr. Carr had failed to keep abreast of the latest technology and that Mr. Carr had failed to upgrade his related technical skills. In discussions during 1996 and early 1997, Mr. Sendelbach told Mr. Carr to come up with a training and employment plan to "contribute to the success" of the Bank. By September 1997 Mr. Carr had failed to come up with such a plan and Mr Sendelbach communicated his frustration in an email to Mr. Carrr. Mr. Carr claims to have come up with a plan which Mr. Sendelbach summarily dismissed.

After 1996 Mr. Carr's annual bonuses started to go down: $17,000 in 1996; $12,000 in 1997; $10,000 in 1998. These decreases were due, at least in part, to the Bank's dissatisfaction with Mr. Carr's performance. Mr. Hull's February 1997 appraisal of Mr. Carr indicated that Mr. Carr did not meet expectations in the areas of product knowledge, quantity of work, leadership/management skills, and written skills. In the summer of 1997, Mr. Carr was informed once again via an email from Mr. Sendelbach that he needed to "come up with a plan."

In March 1998 Richard Cappellano was hired as Chief Information Officer ("CIO") and a director of the I.T. Department. Mr. Cappellano shared his duties with Mr. Hull for approximately three or four months. In July 1998 the Bank hired Ariel Perez as Vice President of Production Support within the I.T. Department. Mr. Perez reported directly to Mr. Cappellano. In August 1998 Mr. Hull was transferred out of the I.T. Department and Mr. Carr began to report directly to Mr. Perez.

During the summer of 1998, Mr. Perez assigned several tasks to Mr. Carr to be completed within a prescribed time schedule. Mr. Carr failed to complete some of the tasks on schedule and others were performed in a manner unacceptable to Mr. Perez. Mr. Perez's dissatisfaction was communicated to Mr. Carr in writing on

October 19, 1998. Also during the summer of 1998, prior to leaving for a trip to Germany, Mr. Sendelbach directed Mr. Carr to provide him with a mobile telephone that could be utilized in Germany as well as the United States. The telephone delivered to Mr. Sendelbach shortly before his departure was not such a telephone. Mr. Sendelbach called Mr. Carr at home—Mr. Carr had called in sick that day—and informed him of his displeasure. The fact that Mr. Sendelbach was "not happy" with Mr. Carr was memorialized in a subsequent email.

According to the Bank, there were other large projects during the fall of 1998 which Mr. Carr failed to perform adequately. Mr. Carr disputes the claims of substandard performance, blaming any purported shortcomings on "vendors' errors" or mischaracterizations by the Bank. Around the same time, Mr. Cappellano advised Mr. Carr to speak with Gerry Barton, the Bank's Vice President for Human Resources, about another position for Mr. Carr within the Bank or about resigning his employment.

Shortly thereafter, on October 9, 1998, Mr. Carr filed a Charge of Discrimination with the EEOC. By a letter dated November 3, 1998, the EEOC advised Mr. Carr that the Bank had been served with his charge of employment discrimination. Cappellano and Perez claim that they did not know of the EEOC complaint until after Mr. Carr's separation more than three months later. Mr. Carr claims that after filing his EEOC complaint, he started to get "written up like crazy." Mr. Carr maintains he did not perform his job poorly. On November 12, 1998, Cappellano and Perez met with Mr. Carr and informed him of their continuing dissatisfaction with his work.

Around the time that Mr. Carr filed his EEOC complaint, Ms. Nina Epstein, Mr. Carr's attorney, began negotiations with Mr. Barton and the Bank's legal counsel, Nancy Weiss. The negotiations regarded the terms and conditions of Mr. Carr's separation from the Bank. The parties dispute whether any agreement was reached. Ms. Epstein has sworn in an affidavit that Ms. Weiss told her on February 5, 1999, that very day would be Mr. Carr's last day of employment and that he if he did not leave voluntarily he would be escorted out by security. Ms. Epstein also states that she "believed that an agreement had been reached with the Bank." The Bank claims Mr. Carr was never officially terminated, no final agreement had been reached, and that he simply walked out on the job on the advice of Ms. Epstein.

In any event, Mr. Carr's last day at the Bank was February 5, 1999. According to Mr. Carr, "he [didn't] know if [he] was terminated," and "[he] was never officially told that [he] was terminated." The Bank maintains that Mr. Carr was not terminated, that he left of his own accord.

Prior to Mr. Carr's departure, the Bank had hired Mr. Patrick Ansalone in the I.T. Department. Upon Mr. Carr's separation from the Bank, Mr. Ansalone assumed Mr. Carr's duties. Mr. Ansalone is two years older than Mr. Carr.

### III. Standard for Summary Judgment

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate only if "there is no genuine issue as to material fact" and "the moving party is entitled to judgment as a matter of law." *Id.* "In assessing the record to determine if such issues exist, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129 (2d Cir.2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). That

is to say, the deposition testimony, affidavits, and documentary evidence must be viewed in the light most favorable to the plaintiff. *Roge v. NYP Holdings, Inc.,* 257 F.3d 164, 165 (2d Cir.2001); *Bedoya v. Coughlin,* 91 F.3d 349, 351 (2d Cir.1996). However, "in moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Summary judgment in an age discrimination case is typically inappropriate since intent and state of mind are often at issue. *See Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir. 1994). However, a plaintiff must nevertheless "offer concrete evidence from which a reasonable juror could return a verdict in his favor." *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir. 1988) (quoting *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505). As explained below, Mr. Carr has failed to do so.

## IV. Discussion

### A. The Age Discrimination Claims

■ In a discrimination case brought under the ADEA,[1] a plaintiff may defeat a defendant's summary judgment motion by presenting direct evidence of unlawful discrimination or by meeting the requirements of the burden-shifting analysis for Title VII cases outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Tarshis v. Riese Org.,* 211 F.3d 30, 35 (2d Cir.2000); *de la Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.,* 82 F.3d 16, 20 (2d Cir.1996). Under the *McDonnell Douglas* analysis, plaintiff "has the initial burden of 'proving by the preponderance of the evidence a prima facie case of discrimination.'" *Carlton,* 202 F.3d at 134 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). To establish a prima face case, "[the] plaintiff must show that he is (1) a member of the protected age group, (2) qualified for the position, (3) subjected to an adverse employment decision or discharge, and that (4) his discharge occurred under circumstances giving rise to an inference of discrimination." *Tarshis,* 211 F.3d at 35. Once plaintiff has successfully stated a prima facie case, the burden shifts to defendant employer "to articulate a legitimate, non-discriminatory reason for its adverse employment action." *Id.* at 36. After the employer has articulated a valid justification, the presumption of discrimination raised by the prima facie case "drops out," and the burden "shifts back to plaintiff to prove that discrimination was the real reason for the employment action." *Id.* (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Since Mr. Carr has failed to establish a prima facie case, the court need only undertake the first strand of the *McDonnell Douglas* analysis and need not concern itself with its burden-shifting components. *See Jenkins v. Metro. Opera Ass'n, Inc.,* No. 96 Civ. 6665, 1999 WL

---

1. Plaintiff's NYSHRL age discrimination claim is treated in a manner identical to plaintiff's ADEA claim. *See Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1180 (2d Cir.1992). While the court will only explicitly address the ADEA claim, the court's analysis applies equally to the state law claim. *See Stein v. McGraw–Hill, Inc.,* 782 F.Supp. 207, 210 n. 1 (S.D.N.Y.1992).

147745, at *7 (S.D.N.Y. Mar. 18, 1999), aff'd 213 F.3d 626 (2d Cir.2000).

For purposes of this summary judgment motion, the court assumes that plaintiff has met his burdens with respect to the first three elements of his prima facie case. Therefore the only issue is whether plaintiff has satisfied the fourth element, i.e., whether he has demonstrated that his discharge occurred under circumstances which give rise to an inference of discrimination. The court in *Tarshis* recognized that this fourth element of the prima facie case may be satisfied by "a showing that the plaintiff's position remained open after he was discharged, or that he was replaced by someone outside his protected class." *Tarshis,* 211 F.3d at 36. However, if the plaintiff is replaced by someone close to his age or within the same protected class, then establishing a prima facie case becomes more difficult. *See O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) ("In the age-discrimination context, [an inference of discrimination] cannot be drawn from the replacement of one worker with another insignificantly younger."); *James v. N.Y. Racing Ass'n,* 233 F.3d 149, 153–54 (2d Cir.2000) (holding that plaintiff must demonstrate employer's "preference for a person not of the protected class").

In the case at bar it is undisputed that the Bank hired Mr. Ansalone several months before Mr. Carr's separation, that Mr. Ansalone assumed Mr. Carr's duties upon Mr. Carr's separation from the Bank and that Mr. Ansalone is almost two years older than Mr. Carr. *See* Carr Dep. at 38; Cappellano Aff. ¶ 16; Austin Aff. ¶ 13. In light of these undisputed facts, the court can draw no inference of discrimination, and Mr. Carr therefore fails to satisfy the essential fourth element of his prima facie case. *O'Connor,* 517 U.S. at 313, 116 S.Ct. 1307; *Owens v. New York City Hous.*

*Auth.,* 934 F.2d 405, 408–09 (2d Cir.1991) ("[A] prima facie case of age discrimination ... requires a plaintiff alleging discriminatory termination to show ... (4) that a younger individual has replaced her.").

Mr. Carr asserts that "the Second Circuit has long held that an employee is not required to show that he was replaced by a younger person." Pl.'s Mem. at 15. Mr. Carr cites *Woroski v. Nashua Corp.,* 31 F.3d 105, 108 (2d Cir.1994), for this proposition. While the court in *Woroski* did opine that in making out a prima facie case, "[a] plaintiff is not required to show that he was replaced by a younger, newly-hired employee," *id.,* in that case, plaintiff had uncovered some direct evidence of discrimination. *See id.* at 109 ("[F]urthermore, the evidence of [the employer's] statements was sufficient to establish a prima facie case satisfying the element of circumstances giving rise to a possible inference of discrimination."). Moreover, the *Woroski* decision was rendered before the Supreme Court's decision in *O'Connor.* This court is of the opinion that *O'Connor* now requires that, in the absence of direct evidence of discrimination, a plaintiff demonstrate that he has been replaced by a younger individual in order to make out a prima facie case. *See O'Connor,* 517 U.S. at 313, 116 S.Ct. 1307; *Owens,* 934 F.2d at 409.

In an attempt to overcome this fatal defect, Mr. Carr asserts that by hiring a person older than himself, the Bank was merely trying to insulate itself from liability. Mr. Carr states that his EEOC complaint was filed around the same time as the Bank's hiring of Mr. Ansalone, and that "[c]ertainly, the Bank would have an incentive from the legal standpoint to make Carr's immediate replacement older than he." Pl.'s Mem. at 16. However, plaintiff has failed to adduce any evidence whatsoever that could give rise to an infer-

ence of such a calculated move. The mere fact that plaintiff alleges this theory does not make it so and such a conclusory allegation is insufficient to withstand a motion for summary judgment. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) ("[U]nsupported allegations do not create a material issue of fact."); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985) ("[C]onclusory allegations of discrimination are insufficient [to survive a motion for summary judgment].").

Moreover, plaintiff's theory is belied by defendant's uncontroverted evidence that almost half of plaintiff's former coworkers are over forty years of age (the ADEA's protected class) and that plaintiff was younger than at least two other employees in his department (and only one year older than a third). *See* Austin Aff. ¶ 12. At the summary judgment stage, "the plaintiff, in order to prevail, must have evidence from which the factfinder can reasonably find the essential elements of the claim." *James*, 233 F.3d at 154. Since plaintiff has failed to do so, summary judgment must be entered for defendant on the age discrimination claims.[2]

### B. The Religious Discrimination Claims

Plaintiff in his complaint asserted religious discrimination claims under Title VII and the NYSHRL. *See* Compl. ¶¶ 53–59. These claims were premised almost entirely on statements allegedly made by a European employee of the Bank, fourteen years prior to Mr. Carr's separation. *See* Compl. ¶¶ 31–33; Carr Dep. 39–43. The

Bank asserts in its Memorandum of Law that plaintiff's religious claim is "so utterly devoid of merit that it is clear that this claim was only alleged in order to create a 'hot button issue' that would embarrass the Bank, given that the Bank is German-owned." Def.'s Mem. at 17 n. 14.

Apparently the Bank was close to the mark, for plaintiff's Memorandum of Law failed to mention, much less respond to, the Bank's arguments. Rather, plaintiff in his Affidavit in Opposition meekly states that he "hereby withdraw[s] [his] claims of discrimination based on religion." Pl.'s Aff. ¶ 13. While plaintiff never formally requested permission to voluntarily dismiss his religious discrimination claims, *see* Fed.R.Civ.P. 41(a)(2), plaintiff's counsel made it clear at oral argument that plaintiff sought to dismiss the claims. *See* Tr. of Oral Argument at 7.

The court hereby grants plaintiff's request and the claims of discrimination based on religion are dismissed with prejudice. *See Fitzgerald v. Alleghany Corp.*, 882 F.Supp. 1433, 1437 (S.D.N.Y.1995) ("Under Rule 41(a)(2), the plaintiff requires leave of court to dismiss its case, and dismissal may be conditioned on such terms and conditions as the court thinks fit.").

### C. The Retaliation Claims

■ Plaintiff's complaint also asserted related causes of action alleging retaliation under the ADEA, Title VII, and the

---

2. Plaintiff has also failed to produce sufficient direct evidence of discrimination to support a "mixed motive" claim. *See de la Cruz*, 82 F.3d at 23. The burden on plaintiff to establish such a direct claim "is greater than the level of proof necessary to make out a *McDonnell Douglas* prima facie case." *Id.* at 23. Other than a few vague hearsay within hearsay statements allegedly made by Mr.

Sendelbach, plaintiff can offer no other direct evidence of a discriminatory intent on the part of his supervisors. Any mixed motive claim must therefore also fail. *See Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir.2001) ("[T]he stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination.").

NYSHRL.[3] The complaint alleged that defendant unlawfully discharged plaintiff in retaliation for having exercised his right to file an EEOC complaint. In his Memorandum of Law, plaintiff claims that his superiors' criticisms of him intensified after the filing of the EEOC charge which led to his discharge. Pl.'s Mem at 25. According to plaintiff, since his alleged termination closely followed in time his filing of an EEOC charge, "a causal connection clearly exists between the protected activity and the adverse employment action." *Id.* Plaintiff's assuredness notwithstanding, he has failed to state a prima facie case.

"To establish a prima facie case of retaliation, an employee must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1998). For purposes of this summary judgment motion, the court assumes that plaintiff has satisfied the first requirement of a prima facie case.

As for the second element, plaintiff has failed to demonstrate an adverse employment action on the part of defendant. Plaintiff testified in his deposition that when he walked out on the Bank, "I [didn't] know if I was terminated.... I'm being honest with you. I was never officially told I was terminated." Carr Dep. at 43–47. Plaintiff also admits to having started separation negotiations with the Bank prior to the filing of the EEOC charge and that discussions concerning the terms and conditions of his departure were ongoing at the time he left. *Id.* at 44, 45–47. Moreover, less than one month prior

to his departure, plaintiff was told by defendant, "[y]ou still have the job at [the Bank]." *Id.* at 46. Nevertheless, plaintiff elected to leave the Bank on February 5, 1999, and not return. *Id.* at 47. Reading these facts in the light most favorable to plaintiff, this court can only conclude that plaintiff was not terminated. Since plaintiff has failed to make out the second element of his prima facie case, defendant is therefore entitled to summary judgment on the retaliation claims.

■ Even assuming that plaintiff was terminated, he has failed to demonstrate a causal connection, the final element of a retaliatory discharge claim. A plaintiff can demonstrate a causal connection (a) indirectly by showing that the protected activity was followed closely by discriminatory treatment; (b) indirectly through other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of retaliatory animus. *DeCintio v. Westchester County Med. Ctr.,* 821 F.2d 111, 115 (2d Cir.1987). Plaintiff argues option (a)—the fact that he was criticized and allegedly terminated after filing his EEOC charge *ipso.facto* demonstrates a causal connection.

The Second Circuit recently noted that it "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman–Bakos v. Cornell Co-op Extension of Schenectady County,* 252 F.3d 545, 554 (2d Cir.2001) (summarizing cases). In this Circuit, courts have held that periods as short as three months have failed to demonstrate a

---

**3.** Plaintiff's state law claims are evaluated under the same analytical rubric as his federal

claims. *See supra,* note 2.

causal connection. *See, e.g., Hollander v. Am. Cyanamid Co.,* 895 F.2d 80, 85 (2d Cir.1990). In the instant case, the filing of the EEOC charge occurred on October 9, 1998, and the alleged termination took place on February 5, 1999—an intervening period of almost four months. "Moreover, there were developments [during the period in question] that provided valid, non-discriminatory reasons for the adverse employment actions and that undermine the plausibility of the causal connection [the plaintiff] seeks to establish." *Lambert v. N.Y. State Office of Mental Health,* No. 97 Civ. 1347, 2000 WL 574193, at *13 (E.D.N.Y. Apr. 24, 2000). Prior to the filing of the EEOC charge, plaintiff received several poor performance evaluations and notifications. Defendant's well-documented dissatisfaction with plaintiff's performance continued until his separation. Cappellano Aff. ¶¶ 8–12; Carr Dep. at 52–57. As indicated above, the parties also engaged in good faith negotiations concerning plaintiff's separation prior to and subsequent to the filing of the charge. This court, therefore, holds that, even assuming plaintiff was terminated, plaintiff has failed to demonstrate the requisite causal connection. In the alternative, even if plaintiff could state a prima facie case, he could not rebut defendant's legitimate, non-pretextual reasons for taking action against him for the reasons previously stated. *See Lambert,* 2000 WL 574193, at *13.

Plaintiff mistakenly relies on *Quinn, supra,* and *Suggs v. Port Authority of New York & New Jersey,* No. 97 Civ. 4026, 1999 WL 269905 (S.D.N.Y. May 4, 1999). *Quinn* is distinguishable in that the plaintiff in *Quinn* had satisfactory performance evaluations and annual salary increases prior to filing her charge of discrimination. *See Quinn,* 159 F.3d at 763. It was only *after* filing her charge that she suffered the adverse employment actions that

formed the basis of the retaliation claim. *Id.* In the case at bar, it is undisputed that plaintiff received numerous warnings, orally and in writing, that his performance was unsatisfactory. *See, e.g.,* Carr Dep. at 42–57. Moreover, it is undisputed that plaintiff's annual bonus went down during the years preceding the filing of his charge, at least in part due to defendants's dissatisfaction with plaintiff's job performance. *See* Def.'s Local R. 56.1 Statement ¶ 40; Pl.'s Local R. 56.1 Statement ¶ 40.

With all due respect to the court in *Suggs,* this court disagrees with *Suggs*'s holding that a period of six months constitutes, per se, a short enough period of time to imply causation. As indicated above, there is no bright line rule in this Circuit and in light of the surrounding circumstances in the case at bar, the period of time in question is insufficient to permit a reasonable jury to conclude that retaliatory animus was a factor in plaintiff's termination.

In sum, since plaintiff has failed to make out a prima facie case for retaliation, defendant's summary judgment motion on those claims is granted.

## D. The Infliction of Emotional Distress Claims

■ Finally, in his complaint plaintiff asserts that defendant inflicted emotional distress upon him in violation of state law. At oral argument, however, plaintiff's counsel expressed her intention to abandon those claims. *See* Tr. of Oral Argument at 7–8. Moreover, the court notes that these claims are barred by the Workers' Compensation exclusivity rule. *See Torres v. Pisano,* 116 F.3d 625 (2d Cir. 1997); *Hart v. Sullivan,* 55 N.Y.2d 1011, 449 N.Y.S.2d 481, 434 N.E.2d 717 (N.Y. 1982). The court, therefore, grants sum-

mary judgment to defendant as to the infliction of emotional distress claims.

## V. Conclusion

For the foregoing reasons, defendant's motion for summary judgment is **GRANT-ED** as to the age discrimination claims and the retaliation claims. Summary judgment is also **GRANTED** to defendant as to the infliction of emotional distress claims. Plaintiff's religious discrimination claims are **DISMISSED WITH PREJUDICE**. Defendant's motion with respect to the religious discrimination claims is **DENIED** as moot. An appropriate Order accompanies this Opinion.